WO                                                                                          MH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Robert Joseph Benge, | No. CV 18-02544-PHX-MTL (CDB) |
| Plaintiff, |  |
| v. | **ORDER** |
| Charles L. Ryan, et al., |  |
| Defendants. |  |

On August 9, 2018, Plaintiff Robert Joseph Benge, who was then confined in the Arizona State Prison Complex (ASPC)-Florence, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act. In an October 19, 2018 Order, the Court dismissed the Complaint because it failed to state a claim and gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Court's Order. Plaintiff subsequently sought a 30-day extension of the deadline to file an amended complaint, and in a December 7, 2018 Order, the Court granted his request for an extension of time. Plaintiff failed to file an amended complaint within 30 days, however, and on January 23, 2019, the Clerk of Court entered Judgment dismissing this action with prejudice.

On February 4, 2019, Plaintiff filed a Motion for Reconsideration. In a February 15, 2019 Order, the Court construed Plaintiff's Motion for Reconsideration as a Motion to Vacate Judgment and for Extension of Time. The Court granted the Motion insofar as it

| | |
|---|---|
| 1 | directed the Clerk of Court to vacate the January 23, 2019 Judgment and reopen this action |
| 2 | and gave Plaintiff 20 days to file an amended complaint. After seeking another extension |
| 3 | of time, Plaintiff filed a First Amended Complaint on March 20, 2019. In a June 7, 2019 |
| 4 | Order, the Court granted Plaintiff's Motion for Extension of Time, dismissed the First |
| 5 | Amended Complaint, and gave him 30 days to file a second amended complaint. |
| 6 | On July 15, 2019, Plaintiff filed a Second Amended Complaint (Doc. 17). On |
| 7 | August 29, 2019, Magistrate Judge Camille D. Bibles issued an Order noting that Plaintiff |
| 8 | appeared to have been released from prison on August 9, 2019, yet had not filed a notice |
| 9 | of change of address. The Magistrate Judge ordered Plaintiff to show cause, on or before |
| 10 | September 27, 2019, why this action should not be dismissed for failure to comply with |
| 11 | the Court's October 19, 2018 Order, which expressly required Plaintiff to file a notice of |
| 12 | change of address and, within 30 days of his release, either (1) notify the Court that he |
| 13 | intended to pay the unpaid balance of his filing fee or (2) file a non-prisoner application to |
| 14 | proceed in forma pauperis. |
| 15 | On September 23, 2019, Plaintiff filed a Notice of Change of Address identifying |
| 16 | his new address. He did not notify the Court of his intention to pay the balance of the filing |
| 17 | fee or file a non-prisoner application to proceed in forma pauperis. On October 18, 2019, |
| 18 | the Magistrate Judge issued a Report and Recommendation recommending that this matter |
| 19 | be dismissed without prejudice for failure to comply with the Court's Orders. |
| 20 | On November 4, 2019, Plaintiff filed an Application to Proceed In District Court |
| 21 | Without Prepaying Fees (Doc. 24). In a December 17, 2019 Order, the Court accepted the |
| 22 | Magistrate Judge's Report and Recommendation after noting that Plaintiff had failed to |
| 23 | object to the Report and Recommendation or provide any explanation for his failure to |
| 24 | comply with the Court's prior Orders. Judgment was entered the same day. |
| 25 | On January 9, 2020, Plaintiff filed a Motion for Reconsideration (Doc. 27). The |
| 26 | Court will grant the Motion, will instruct the Clerk of Court to vacate the December 17, |
| 27 | 2019 Judgment, and will dismiss the Second Amended Complaint and this action. |
| 28 | . . . . |

**I.     Motion for Reconsideration**

The Court will construe Plaintiff's pending Motion as a motion filed pursuant to either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441-42 (9th Cir. 1991) (motion to reconsider can be construed as Rule 60 or Rule 59 motion even when movant cites no governing Federal Rule of Civil Procedure). It is within the Court's discretion to grant or deny a motion for reconsideration filed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Reconsideration is appropriate under Rule 59(e) "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* at 1263. "Rule 60(b) 'provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief.'" *Id.* (quoting *Fuller*, 950 F.2d at 1442); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

In his Motion for Reconsideration, Plaintiff alleges that he did, in fact, submit an objection to the Magistrate Judge's Report and Recommendation and that it was contained "within the same priority mail envelope" as his November 4, 2019 Application to Proceed. He also claims it is "more probabl[e] than not" that he filed an objection to the Magistrate Judge's Report and Recommendation, because he filed a similar objection to a report and recommendation issued in CV 18-00349. Plaintiff posits that the Clerk of Court may have "inadvertently filed the objections to this case [in] . . . 18cv-00349-PHX-MTL (CDB)."[1]

This is not the first time Plaintiff has been unable to recall with certainty whether he filed a document. His February 4, 2019 Motion for Reconsideration contained similarly

---

[1] This does not appear to be the case. The docket for CV 18-00349 reveals that on November 1, 2019, Plaintiff filed an objection to a report and recommendation entered in that action. (Doc. 78 in CV 18-00349.) That objection bears the case number "18-cv-00349-MTL (CDB)," *id.*, and it is the only document titled "Objection to Report and Recommendation" that appears on the docket for CV 18-00349.

vague representations concerning a motion for extension that he had "more probably than not" submitted to prison officials for filing on January 3, 2019. In an abundance of caution, however, the Court will deem the Objection, which Plaintiff has attached to his Motion, timely filed, and will consider the arguments raised therein in connection with his Motion for Reconsideration.

Plaintiff states in his Objection that he believed he had 120 days from his release to file a non-prisoner in forma pauperis application. He also attributes his failure to comply with the Court's Orders to (1) his homelessness following his release from prison; (2) his subsequent relocation to North Carolina; and (3) his inability to obtain certain medications, including mental health medications, following his move out of state. In light of these factors, the Court will grant the Motion for Reconsideration and will direct the Clerk of Court to vacate the December 17, 2019 Judgment.

**II.      Application to Proceed in District Court Without Prepaying Fees or Costs**

Plaintiff's non-prisoner Application to Proceed In District Court Without Prepaying Fees or Costs indicates that he is unable to prepay the filing fees for this action. The Application will therefore be granted.

**III.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**IV.  Second Amended Complaint**

In his four-count Second Amended Complaint, Plaintiff asserts claims under the Eighth Amendment's Cruel and Unusual Punishment Clause, the Fourteenth Amendment's Equal Protection Clause, and the Americans with Disabilities Act (ADA). He names as Defendants former Arizona Department of Corrections (ADC) Director Charles L. Ryan, Health Care Director Richard Pratt, ADC medical contractor Corizon Health, LLC ("Corizon"), Physician Assistant Carey Tucker, Psychiatrist Thomas Rawa, Psychologist III N.V. Bertel, and Psychology Associate S. Mitchell. Plaintiff is seeking $3.8 million in compensatory and punitive damages, along with costs and attorney's fees.

In **Count One**, Plaintiff asserts that he was denied adequate medical care following a suicide attempt, in violation of his rights under the Eighth Amendment. (Doc. 17 at 5.)[2]

---

[2] The citation refers to the document and page number generated by the Court's

Plaintiff alleges that on April 17, 2014, he attempted to commit suicide by overdosing on medication. (*Id.*) Plaintiff subsequently informed a correctional officer that he was experiencing chest pain and having trouble standing and walking. (*Id.*) Two other correctional officers transported Plaintiff to the medical complex in a wheelchair. (*Id.*) Once there, his symptoms continued to worsen, and he lost consciousness several times. (*Id.*) Plaintiff told Nurse Mcatee that he had ingested medication in order to take his life "due to depression and not receiving adequate mental health care." (*Id.*) Plaintiff's blood pressure readings were 161/95, 190/105, and 192/110, and his pulse was 62 beats per minute. (*Id.*) Nurse Mcatee summoned the on-call provider, Defendant Tucker, but Tucker "failed to provide [Plaintiff] immediate emergency treatment for [his] drug overdose by not given [sic] the authorization to call 911, transport [Plaintiff] to a hospital by ambulance." (*Id.* at 6.) Instead, he "waited for a manifest emergency to become more serious, even causing death." (*Id.*) As a physician's assistant, Tucker was allegedly aware that the failure to pump Plaintiff's stomach or administer charcoal would allow the medications Plaintiff had taken to be completely absorbed into his bloodstream. (*Id.*) "[A] minimally competent professional would not have treated" Plaintiff as Tucker did, because Plaintiff's "unstable vital signs" demonstrated that "[o]bservation only was [an] inappropriate course of action." (*Id.*)

Plaintiff claims that Tucker harbored "serious animosity" toward Plaintiff because Tucker had been named as a defendant in one of Plaintiff's prior lawsuits, *Benge v. Ryan*, 14-0402-PHX-DGC (SPL). (*Id.* at 7.) Tucker's treatment of Plaintiff therefore constituted a "serious conflict of interest," according to Plaintiff. (*Id.*) Plaintiff also claims that Tucker's treatment decisions were motivated by a "financial incentive" because his employment would be terminated if he referred a patient to the hospital. (*Id.*) According to Plaintiff, Corizon policy dictates that prisoners only be sent to the hospital if they are "on the verge of imminent death." (*Id.*) Any medical expense for a prisoner at ASPC-Lewis was viewed as unnecessary, and "'elective' hospital transfers" would be denied even

Case Management/Electronic Case Filing system.

where a prisoner was experiencing "symptoms of extreme medical distress." (*Id.* at 8-9.) Such policies prevented Plaintiff from receiving emergency care from an outside hospital and allowed Defendant Tucker—an "uncaring incompetent[]" with a "sword of termination looming above him"—to disregard an excessive risk to Plaintiff's health or safety. (*Id.*) Lastly, Plaintiff claims that Defendant Tucker was a final policymaker for Corizon and that, as a physician assistant, he was required by Arizona law to be supervised by a medical doctor. (*Id.* at 9.)

As a result of the foregoing conduct, Plaintiff allegedly suffered vomiting, pain, physical injury, post-traumatic stress disorder, depression, fear, emotional distress, anxiety, nervousness, hopelessness, trauma, and "paranoid nightmares" and was forced to commit himself to a psychiatric hospital. (*Id.* at 5, 7-8.)

In **Count Two**, Plaintiff alleges that he was denied adequate mental health care by Defendants Corizon, Ryan, Pratt, Rawa, Bertel, and Mitchell, in violation of the Eighth Amendment. (*Id*. at 10.) According to the Complaint, Defendant Rawa had a series of "cursory" appointments with Plaintiff in February 2014. (*Id.* at 12.) At one of these appointments, Rawa advised Plaintiff that he "did not qualify" for talk therapy with Rawa. (*Id.*) At another, Rawa failed to take Plaintiff off a particular medication (Tegretol) when laboratory tests indicated that Plaintiff had elevated sodium and chloride levels. (*Id.*) On another occasion, Rawa "failed to act to [Plaintiff's] risk of suicide" when Plaintiff "advise[d] him of [Plaintiff's] thoughts of suicide." (*Id.*) In addition, Rawa allegedly allowed Plaintiff to remain on older medications that were not effective. (*Id.* at 12.)

After witnessing his friend's murder on March 17, 2014, Plaintiff submitted multiple Health Needs Requests (HNRs) requesting talk therapy "as [he] wanted to kill [him]self." (*Id.* at 14-15.) Plaintiff "made several suicide gestures to no avail." (*Id.* at 15.) On March 26, 2014, he submitted an HNR seeking "more than a 'cursory' interview" with Defendant Rawa and stating that he needed grief counseling because he had recently witnessed a friend's murder. (*Id.* at 13.) "Upon in formation and belief," Rawa refused to see Plaintiff because an ADC/Corizon policy prohibited him from providing grief

counseling or talk therapy. (*Id.*)

On May 29, 2014, Plaintiff submitted an HNR to Defendant Bertel in which he requested an appointment with "a licensed psychiatric provider." (*Id.*) On June 3, 2014, Bertel responded, stating that Plaintiff "would see the 'yard provider,' [h]e refused to provide grief or talk therapy due to a[n] ADC policy."[3] (*Id.*) According to Plaintiff, this was a "breach[]" of Bertel's duty of care owed to him under ADC's contract with Corizon. (*Id.* at 13-14.) Plaintiff also notes that, under Arizona law, "a licensed psychologist cannot write RX's for medications, only provide talk therapy." (*Id.* at 13.)

As a result of Rawa and Bertel's conduct and ADC/Corizon policies, customs, and practices, Plaintiff was forced to see "unqualify[ied] 'Psych Associates' [who] served as gatekeepers to mental health care." (*Id.* at 14.) One of these Psych Associates, Defendant Mitchell, was allowed to make assessments and diagnoses and act as a gatekeeper and final policymaker without any supervision" (*Id.*) At an April 17, 2014 appointment with Defendant Mitchell, Plaintiff "could not stop crying." (*Id.*) He told Mitchell that he no longer wanted to live. (*Id.*) Mitchell disregarded Plaintiff's heightened suicide risk, telling Plaintiff to "pray and keep [his] faith" but failing to place him on suicide watch. (*Id.*) Hours later, Plaintiff attempted suicide. (*Id.*)

Corizon, Pratt, and Ryan's policy, practice, and custom of employing an insufficient number of mental health care staffers and providing older, ineffective mental health medications were the "moving force" behind Rawa, Bertel, and Mitchell's conduct and Plaintiff's April 17, 2014 suicide attempt. (*Id.* at 10-11.) Plaintiff also claims that Defendants Corizon, Ryan, and Pratt "were aware of widespread and systematic abuse of inmates," that Corizon has a policy of providing inadequate care to inmates that is driven by "financial incentive/cost/profit," and that Ryan and Pratt's "recalcitrance flows from their decision to privatize health care in order to save money." (*Id.* at 11.)

. . . .

---

[3] It is not clear whether Plaintiff was refused grief or talk therapy by Defendant Bertel or the yard provider.

As a result of Defendants' conduct, Plaintiff attempted suicide; suffered pain, physical injury, mental and emotional sickness, post-traumatic stress disorder, and depression; and was denied the right to "enjoy [his] life to the fullest extent." (*Id.*at 10, 16.)

In **Count Three**, Plaintiff alleges that he was denied reentry transition services, in violation of the Eighth Amendment and the Fourteenth Amendment's Equal Protection Clause. (*Id.* at 17.) Plaintiff, who had "been in ADC prison for almost 20 years for a non-violent crime," had requested such services "countless times" over a two-year period by filing HNRs, and Ryan, Pratt, and Corizon were made aware of his requests through inmate letters, grievances, and grievance appeals. (*Id.*) He failed to receive any transition services, however, because Corizon had a policy, practice, or custom of "having unqualified mental health staff serv[e] as gatekeepers to mental health care." (*Id.*) Plaintiff claims that he was often seen by "lower-level psychology associates" like Defendant Mitchell, who told Plaintiff that she lacked any training in reentry transition services. (*Id.*) Mitchell's supervisor, Defendant Bertel, refused to see Plaintiff, as set forth in Count Two. (*Id.*) According to Plaintiff, "AZ Law (A.R.S.) requires reentry services by Director Ryan to a person who requested such services countless times, especially after being in prison for almost 20 years." (*Id.*)

Plaintiff claims that by denying him transition services, Defendants "acted with an intent or purpose to discriminate against him based upon his membership in protected class Parsons v. Ryan." (*Id.*) He also claims that he was treated differently from other prisoners and that there was no rational basis for the disparate treatment. (*Id.*) As a result, Plaintiff had his apartment broken into twice; had his new car, computer, cell phones, bicycle, and medications stolen; suffered pain, anxiety, post-traumatic stress disorder, mental trauma, depression, hallucinations, hot flashes, and suicidal tendencies; and was ultimately forced to commit himself to a mental health facility. (*Id.*)

. . . .

. . . .

In **Count Four**, Plaintiff claims that his rights under the ADA and the Eighth Amendment[4] were violated by Defendants Rawa, Bertel, Mitchell, Corizon, and Pratt when they failed to accommodate his disability by denying him placement in a "more appropriate facility" that, apparently, would have afforded him increased access to mental health care. (*Id.* at 18.) Defendant Mitchell allegedly noted that Plaintiff's treatment notes reflected his prior request to transfer to ASPC-Phoenix. (*Id.*) In addition, Plaintiff wrote Defendants Bertel and Pratt several inmate letters notifying them of his request. (*Id.*) Plaintiff allegedly advised all Defendants that he was not receiving adequate mental health care at ASPC-Lewis, and he claims that transfer to a mental health facility would have been a "reasonable accommodation." (*Id.*) According to Plaintiff, he is "classif[ied] as ADA within ADC," "was qualified to receive the benefits of services, programs, activities," and was "discriminated against, excluded, denied these benefits, service, programs, activities" as a result of his disability. (*Id.*)

Plaintiff further claims that Defendants "had a policy, custom, and practice of turning a blind eye on prisoners['] mental health care[] and intervention." (*Id.* at 19.) In addition, Defendants Rawa, Bertel, and Pratt allegedly had a supervisory duty to investigate or override decisions of medical staff because they were medical professionals with independent experience in a particular area of medicine. (*Id.*) Corizon, for its part, allegedly failed to centrally coordinate medical services for prisoners, ignoring an ADC health care directive that required each facility to provide comprehensive, planned care that was organized and consistent across facility lines. (*Id.*) As a result, Defendant Mitchell, who was responsible for coordinating Plaintiff's overall medical care, never had Plaintiff's medical file "in front of her to review past information from previous health care providers and to understand the clear scope of [his] mental health history; i.e., previous suicide attempt, previous suicidal threats or gestures." (*Id.* at 20.) According to Plaintiff, Corizon

---

[4] Although Plaintiff also appears to cite the Due Process Clause of the Fourteenth Amendment, that provision only applies to conditions-of-confinement claims asserted by pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Accordingly, the Court does not construe Count Four as a due process claim.

- 10 -

| | |
|---|---|
| 1 | and Pratt "had knowledge of the problem caused by a complete lack of coordinated care," |
| 2 | but they failed to act, and were deliberately indifferent to Plaintiff's confinement in a |
| 3 | facility that could not meet his mental health care needs. (*Id.*) As a result of Defendants' |
| 4 | conduct, Plaintiff allegedly suffered emotional distress, post-traumatic stress disorder, a |
| 5 | suicide attempt, and physical injury. (*Id.* at 17.) In addition, he was denied his right to |
| 6 | enjoy his life to the fullest extent and was forced to commit himself to a hospital for |
| 7 | depression. (*Id.*) |

## V. Discussion

### A. Counts One and Two

#### 1. Statute of Limitations

In § 1983 actions, the applicable statute of limitations is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266, 274-76 (1985); *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1); *Madden-Tyler v. Maricopa County*, 943 P.2d 822, 824 (Ariz. Ct. App. 1997); *Vaughan*, 927 F.2d at 478. The Court must also apply any state law rules for tolling to § 1983 actions. *Hardin v. Straub*, 490 U.S. 536, 544 (1989); *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000); *TwoRivers*, 174 F.3d 987, 992 (1999).

While the statute of limitations and tolling provisions are borrowed from state law, federal law continues to govern when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *TwoRivers*, 174 F.3d at 991. Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers*, 174 F.3d at 991; *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).

Although Plaintiff's claim accrued on April 17, 2014, when his injury occurred, he did not file his Complaint until July 25, 2018—more than four years later.[5] Thus, absent

---

[5] For purposes of this analysis, the Court refers to the date on which the Complaint was signed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (under the "mailbox rule," a document is deemed "filed" when it is delivered by a prisoner to a prison official for mailing); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to a § 1983 complaint filed by a pro se prisoner). In the absence of other evidence,

some basis for tolling, Plaintiff's claim is barred by the applicable statute of limitations.

Plaintiff argues that the statute of limitations was tolled during the pendency of another federal case in which he raised the same claim, *Benge v. Ryan*, CV 16-00914-PHX-DGC (BSB). CV 16-00914 was filed on March 31, 2016, and was dismissed for lack of prosecution on November 4, 2016. (Docs. 1, 16 in CV 16-00914.) Arizona's savings statute provides, in relevant part,

> If an action timely commenced is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

Ariz. Rev. Stat. § 12-504(A); *see also Albano v. Shea Homes Ltd. P'ship*, 128, 254 P.3d 360, 367 (2011)) (discussing application of A.R.S. § 12-504(A) to federal claims). Thus, assuming Plaintiff is entitled to tolling under Arizona's savings statute, his claims are nevertheless untimely. Under Arizona Revised Statute 12-504(A), Plaintiff had until May 4, 2017, to commence a new action. As noted above, this case was not filed until July 25, 2018. Accordingly, Counts One and Two are barred by the statute of limitations.

### 2. Failure to State a Claim

Even if Counts One and Two are not barred by the statute of limitations, they nevertheless fail to state a claim. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both

courts will presume that a document was given to prison authorities for mailing on the day it was signed. *Roberts v. Marshall*, 627 F.3d 768, 770 n.1 (9th Cir. 2010).

know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff has failed to state a claim for deliberately indifferent medical care in Count One. Plaintiff's allegations are too vague and conclusory to state a claim under the Eighth Amendment. Although Plaintiff alleges that Defendant Tucker failed to send him to a hospital, pump his stomach, or administer charcoal, he does not allege any *facts* to show that the treatment Tucker did provide—observation at the prison's medical unit—constituted deliberate indifference. While Plaintiff may disagree with Defendant Tucker's decision to monitor Plaintiff at the prison, at most, this decision was negligent.

Accordingly, Plaintiff has failed to state a claim against Tucker or Corizon for deliberately indifferent medical care.

Plaintiff's claims in Count Two are similarly deficient. Plaintiff does not allege that he was refused treatment by Defendants Rawa and Bertel, rather he claims that he did not receive the type of treatment he wanted—talk therapy—from these Defendants. However, it appears that Plaintiff received "talk therapy" from other individuals, and Plaintiff has not alleged sufficient facts to show that the provision of talk therapy by a Psych Associate constituted deliberate indifference to a serious medical need. To the extent Plaintiff claims that Rawa failed monitor "act on" his risk of suicide, or monitor "dangerous levels of 'Tegretol," his allegations are too vague and conclusory to state a claim. Plaintiff's allegation that Defendant Mitchell failed to respond appropriately to his suicidal gestures is, likewise, lacking sufficient factual support. Accordingly, Plaintiff has failed to adequately allege that he received deliberately indifferent care, and Count Two will be dismissed accordingly.

**B.     Count Three**

      **1.     Equal Protection**

Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff has not alleged that he is a member of a protected class for purposes of the Equal Protection Clause; the class of inmates identified as a plaintiff in *Parsons v. Ryan* has not been recognized as a protected class for such purposes.

The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th

Cir. 2002). Even under this standard, Plaintiff has failed to state a claim. He does not allege any facts showing that he was treated differently than other similarly situated individuals and that there was no rational basis for treating him differently.

### 2. Eighth Amendment

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). As noted in connection with Counts One and Two, deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference," the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Ninth Circuit has made it clear that the deprivation of educational or vocational programming does not amount to the infliction of pain. *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Accordingly, the denial of reentry transition services does not give rise to a claim under the Eighth Amendment. Count Three will therefore be dismissed.

## C. Count Four
### 1. ADA

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state an ADA claim, a plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)). A plaintiff must allege facts to support that he has an impairment that substantially limits one or more of his "major life activities." 42 U.S.C. § 12102(1)(A). "Major life activities" include "functions such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working[.]" 29 C.F.R. § 1630.2(i).

Plaintiff's allegations regarding his disability are too vague and conclusory to state a claim under the ADA. Plaintiff does not allege any facts to show that his depression substantially limited one or more of his major life activities. In addition, he has failed to allege that he was excluded from participation in or denied the benefit of a service, program, or activity *because of* his disability. Instead, he appears to be complaining of inadequate treatment *for* a disability—a claim that is not cognizable under the ADA. *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability." (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). Accordingly, Plaintiff has failed to state an ADA claim.

### 2. Medical Care

Plaintiff does not allege sufficient facts to show that the failure to transfer him to ASPC-Phoenix constituted deliberate indifference to a serious medical need, and he had no independent constitutional right to confinement in a particular facility. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985).

Insofar as Plaintiff alleges that his Eighth Amendment rights were violated by Defendant Mitchell's failure to provide comprehensive treatment, this claim appears to be duplicative of the time-barred claim asserted in Count Two and is, in any event, too vague and conclusory to satisfy Rule 8 of the Federal Rules of Civil Procedure. Accordingly, Plaintiff has failed to state a claim in Count Four, and this count will be dismissed.

## VI. Dismissal Without Leave to Amend

Because Plaintiff has failed to state a claim in his Second Amended Complaint, the Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made three efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1) Plaintiff's Motion for Reconsideration (Doc. 27) is **granted**. The Clerk of Court must **vacate** the December 17, 2019 Judgment (Doc. 26).

(2) Plaintiff's Application to Proceed In District Court Without Prepaying Fees or Costs (Doc. 24) is **granted**.

(3) Plaintiff's Second Amended Complaint (Doc. 17) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

. . . .

. . . .

(4) The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

Dated this 6th day of February, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge